# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| EMMA KATHY LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07CV0648 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Emma Kathy Love, brought this action for judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act (the "Act"). (Docket Entry 2.) The Court has before it the certified administrative record (cited as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 18, 20). For the reasons that follow, the Court should enter judgment for Defendant.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB alleging a disability onset date of August 25, 1999. (Tr. 54-56.) Following denial of

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

that application both initially and upon reconsideration (Tr. 39-40), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 53), who subsequently ruled Plaintiff not disabled under the Act (Tr. 266-79). The Appeals Council thereafter denied Plaintiff's request for review. (Tr. 348-50.)

Plaintiff then filed an unsuccessful application for SSI (Tr. 374-75), as well as her instant Complaint in this Court (Docket Entry 2). The Court subsequently entered a consent order remanding the matter for reconstruction of the administrative record in light of missing exhibits (but without entry of judgment in this action). (Docket Entry 10.) When the Appeals Council made a referral to the ALJ pursuant to that consent order, it directed the ALJ to consider whether to consolidate Plaintiff's SSI claim with her DIB claim at issue in this case. (Tr. 368.) The ALJ reopened the denial of the SSI application and consolidated that matter with the DIB claim covered by the consent order. (Tr. 12.) Plaintiff, her attorney, and a vocational expert ("VE") thereafter appeared at a supplemental hearing. (Tr. 594.) The ALJ then again denied Plaintiff's DIB claim, but granted her SSI claim as of the SSI application date. (Tr. 24.)

In reaching that decision, the ALJ made the following findings, adopted by the Commissioner:

> 1. [Plaintiff] met the insured status requirements of the [] Act through March 31, 2005.

2. [Plaintiff] has not engaged in substantial gainful activity since August 25, 1999, the alleged onset date . . . .

3. Since the onset date of disability, [Plaintiff] has had the following severe impairments: degenerative disc disease of the lumbar spine, chronic left hip bursitis, left knee chondromalacia, obesity, and a depressive disorder . . . .

4. Since the alleged onset date of disability, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

5. . . . [D]uring the period through March 31, 2005, the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) which is unskilled and allows a sit/stand option.

. . . .

6. . . . [B]eginning on January 29, 2007, the date [Plaintiff] filed her [SSI] application, [she] lack[ed] the residual functional capacity to perform any substantial gainful activity on a sustained basis.

. . . .

7. Since the alleged onset date of disability, [Plaintiff] has been unable to perform past relevant work (20 CFR 404.1565 and 416.965).

8. [Plaintiff] . . . was a younger individual age 18-44 on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability during the period through March 31, 2005, because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not the claimant has

transferable job skills. Beginning on January 29, 2007, [Plaintiff] has not been able to transfer any job skill to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

[Plaintiff] is limited to unskilled work.

11. During the period through March 31, 2005, considering [Plaintiff's] age, education, work experience and residual functional capacity, there were a significant number of jobs in the national economy that [she] could have performed . . . .

12. Beginning on January 29, 2007, considering [Plaintiff's] age, education, work experience and residual functional capacity, there are not a significant number of jobs in the national economy that [she] could perform . . . .

13. [Plaintiff] was not disabled prior to January 29, 2007, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

14. [Plaintiff] was not under a disability within the meaning of the [] Act at any time through March 31, 2005, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(Tr. 15-24.)

The instant action subsequently recommenced in this Court, with Defendant answering (Docket Entry 16) and the parties filing cross-motions for judgment (Docket Entries 18, 20). United States Magistrate Judge Wallace W. Dixon then recommended entry of judgment for Defendant (Docket Entry 22), whereupon Plaintiff objected (Docket Entry 24) and Defendant responded (Docket Entry 25). The Court (per then-Chief Judge James A. Beaty, Jr.) ruled that "the Recommendation of the Magistrate Judge is incomplete to the extent that it addressed only the [SSI] claim and not

4

Plaintiff's [DIB] claim." (Docket Entry 26 at 1-2.) As a result, "the matter [was] returned to the Magistrate Judge for consideration of the [DIB] claim . . . ." (Id. at 2.)

## **DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of our review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the

5

case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

6

months.'"  Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id. (internal citations omitted).

This process has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."  Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3]

If a claimant carries the burden at each of the first three steps, the "claimant is disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

7

at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to do prior work, the analysis proceeds to the fifth step, where the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the sequential nature of the five-step disability evaluation appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, *e.g.*,
(continued...)

8

**Assignment of Error**

Plaintiff argues that the ALJ failed to apply the appropriate legal standards in identifying an onset date for Plaintiff's disability. (Docket Entry 19 at 5.) In doing so, Plaintiff also implicitly challenges the ALJ's finding that Plaintiff's disability did not begin before the expiration of her insured status, March 31, 2005. (Docket Entry 24 at 2.) The Commissioner responds that substantial evidence supports the ALJ's determination on this point. (Docket Entry 21 at 4-6; Docket Entry 25 at 2.)

"To qualify for DIB, [Plaintiff] must prove that she became disabled prior to the expiration of her insured status." Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005). In other words, Plaintiff must establish that, prior to March 31, 2005, her date last insured, she could not perform substantial gainful activity due to impairment(s) either which one would expect to result in death or which lasted (or one would expect to last) for a continuous period of not less than twelve months, see 20 C.F.R. § 404.1505. For an SSI claim,

> [o]nset will be established as of the date of filing provided the individual was disabled on that date. Therefore, specific medical evidence of the exact onset date need not generally be obtained prior to the application date since there is no retroactivity of payment because [SSI] payments are made beginning with the date of application provided that all conditions of eligibility are met.

---

[5] (...continued)
Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

9

Titles II and XVI: Onset of Disability ("SSR 83-20"), 1983 WL 31249, at *7.

Here, as detailed above, the ALJ found that the record did not establish disability before Plaintiff's date last insured of March 31, 2005, in that (as of that date) Plaintiff retained an RFC for unskilled sedentary work with a sit/stand option and a significant number of such jobs existed. (Tr. 17-24.) However, the ALJ further determined that the evidence showed Plaintiff's back pain and depression worsened in late 2006 to the extent that they became disabling during the period between the date last insured and the SSI application date in January 2007. (Id.) Accordingly, the ALJ approved Plaintiff's SSI claim as of that latter date. (Tr. 24.) Plaintiff has not identified any specific error by the ALJ in finding an absence of disability prior to the expiration of insured status. (See Docket Entries 19, 24.) That failure warrants denial of relief. See, e.g., Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Nickelson v. Astrue, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s

[the plaintiff] failed to develop these arguments in his Brief, the court will not address them.").

Moreover, based on a review of the record in its entirety, the undersigned Magistrate Judge concludes that substantial evidence supports the ALJ's decision that Plaintiff failed to qualify as disabled by her date last insured. First, as noted by the ALJ, Plaintiff has a history of lower back pain following an on-the-job injury in July 1998. (Tr. 15; see also Tr. 156, 171.) However, a CT myelogram of her lumbar spine in July 1999 revealed normal results and Plaintiff's treating physician could find no anatomic etiology for Plaintiff's back pain. (Tr. 159.) Subsequent nerve conduction studies and electromyography in April 2001 also returned essentially normal findings with no signs of radiculopathy. (Tr. 163.) In September 2001, a diskogram resulted in positive findings of back pain from L4 to S1 and a post-diskogram CT scan showed annular rents with extrusion of contrast at L4-5 and L5-S1. (Tr. 245-46.) In February 2002, Plaintiff underwent an L4-L5 nucleoplasty. (Tr. 160-61.)[6] Post-operatively, Plaintiff consistently informed her surgeon that her pain continually improved, resulting in her release from his clinic on May 30, 2002, with a finding of 14% impairment for purposes of her workers'

---

[6] Nucleoplasty is "[a]n outpatient, minimally invasive procedure to treat contained herniated disks." Molodetskiy v. Nortel Networks Short-Term & Long-Term Disability Plan, 594 F. Supp. 2d 870, 878 n. 16 (M.D. Tenn. 2009).

11

compensation claim,[7] but without any listing of any particular work-related restrictions. (Tr. 251-52.) Plaintiff thereafter complained of some back and leg pain with occasional acute flares (see Tr. 189, 207-12), but her primary care physician continued with conservative treatment. (See Tr. 184-86, 223-26, 230-31.)

Plaintiff reported a significant exacerbation of her back pain in October 2005 (six months after her date last insured) after a chiropractic adjustment. (Tr. 232, 259-60.) A lumbar spine x-ray taken in November 2005 revealed no fracture or spondylolisthesis and reflected intact disc spaces. (Tr. 261.) An MRI showed only relatively mild osteoarthritic change with disc degeneration at L4-L5 and L5-S1, but without disc extrusion, stenosis, nerve root edema, or effacement. (Tr. 234.) On November 7, 2005, Plaintiff described her back as "better." (Tr. 235.) In March 2006, Plaintiff stated that her "[b]ack feels ok now" with some good and bad days. (Id.)

---

[7] Notably, "[t]he terms employed in workers' compensation disability ratings are not equivalent to Social Security disability terminology." Bowser v. Commissioner of Soc. Sec., 121 F. App'x 231, 242 (9th Cir. 2005); see also Stephens v. Heckler, 766 F.2d 284, 285 (7th Cir. 1985) ("A person who suffers an injury on the job usually gets compensation according to the extent of the loss. If the injury forces the person to move to a less demanding but less remunerative job, either the workers' compensation system or the tort system will afford relief. The greater the reduction in income, the greater the compensation. A person who loses 30% of his earnings potential will be rated 30% disabled under workers' compensation . . . . This reflects the fact that the loss from injury is a matter of degree. Not so with the system of disability insurance under the Social Security Act. A person is 'disabled' or not; there are no degrees . . . . A person with a partial disability for purposes of workers' compensation is 'not disabled' under the Social Security Act . . . ." (internal citation omitted)).

In August 2006, approximately 16 months after her date last insured, Plaintiff visited a neurosurgeon for evaluation of lower back, leg, and hip pain. (See Tr. 239-40.) An MRI showed lumbar disc degeneration with lateral recess stenosis. (See Tr. 239.) A CT scan revealed a left paracentral shallow disc protrusion at L4-L5 with a posterior tear and diffuse circumferential annular tearing at L5-S1. (Tr. 241-42.) Nerve conduction studies confirmed irritation of the left L5-S1 nerve root (Tr. 243) and a diskogram came back positive at L4-L5 and L5-S1 (Tr. 521-22). In October 2006, Plaintiff underwent decompression and spinal fusion surgery. (Tr. 474-79.) According to Plaintiff, after her surgery, the sciatica in her left leg improved, but her arthritis and back pain worsened. (Tr. 607-08; see also Tr. 505-09, 535, 542, 593.) She further testified that, as of November 2007, she no longer could live alone and moved in with her daughter. (Tr. 608.) In sum, substantial evidence supports the ALJ's finding that Plaintiff's back condition did not become disabling under the Act until after the expiration of her insured status.

Similarly, substantial evidence supports the ALJ's finding that Plaintiff's depression did not warrant a disability determination under the Act, until her symptoms worsened following her surgery in 2006. In that regard, Dr. Susan Hurt performed a consultive psychological evaluation of Plaintiff in March 2004. (Tr. 196-99.) At that time, Plaintiff reported that she had only

13

occasional depressed moods, that she perceived her limitations as entirely physical, and that she did not feel cognitive or emotional functioning issues prevented her from working. (Tr. 196.) Dr. Hurt concluded that Plaintiff had "no cognitive or psychological deficit that would prevent [her] from learning, retaining, and following simple directions or performing simple, repetitive tasks. . . . [O]utside of physical pain and side effects of pain medication, this evaluation revealed no specific psychological impairment related to [the] capacity [to withstand the stress and pressure of daily work activity]." (Tr. 198-99.)

Consistent with Dr. Hurt's findings, in April 2004, non-examining psychological consultant Dr. Steve Salmony opined that Plaintiff had no medically determinable mental impairment. (Tr. 155.) In November 2004, Plaintiff complained of depression symptoms to her primary care physician, who prescribed medication. (See Tr. 225.) By January 2005, Plaintiff reported that her symptoms had improved. (Id.) Further, in May 2005, Plaintiff described her "nerves" as "doing ok" and noted no problems with her anti-depressant medication. (Tr. 230.) Beyond the medication prescribed by her primary care physician, the record contains no evidence that Plaintiff sought or received counseling or other treatment from a mental health practitioner before the expiration of her insured status. In fact, Plaintiff testified in 2008 that, only after her October 2006 back surgery (nearly a year and a half

14

after her date last insured), did her depression worsen, requiring her to seek mental health treatment. (See Tr. 613-14.) The medical records confirm that she began such treatment in December 2006, nearly two years after her date last insured. (See Tr. 548.)

Notwithstanding the foregoing record evidence substantiating the ALJ's determination that Plaintiff did not qualify as disabled by the time her insured status lapsed, Plaintiff contends the ALJ should have applied SSR 83-20 to establish a disability onset date. (Docket Entry 19 at 5.) In particular, Plaintiff asserts that SSR 83-20 required the ALJ to consult a medical advisor. (Id. at 6.) This argument lacks merit.

First, as to Plaintiff's SSI application, the ALJ found disability as of the earliest possible date that Plaintiff could receive benefits, the SSI application date. See 20 C.F.R. § 416.335. Second, because substantial evidence (within an adequate medical record) supports the ALJ's finding that Plaintiff did not qualify as disabled at any time during the insured period, no need existed for the ALJ to go further for purposes of the DIB claim. See Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997) ("The only necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status, and we agree that the ALJ correctly determined he was not."); McDonald v. Astrue, Civ. Action No. 10-10896-DPW, 2011 WL 3562933, at *10 (D. Mass. Aug. 15, 2011) (unpublished) ("[T]he ALJ was not under any

15

obligation to apply SSR 83-20 in this case. A determination concerning the onset of disability does not need to be made unless an individual has been determined at some point to have been disabled <u>during the insured period</u>. Thus, if, as here, the ALJ finds that the claimant was not disabled <u>during the relevant period</u>, there is no requirement that the ALJ determine the onset date." (internal brackets, citation, and quotation marks omitted) (emphasis added)); see also Bird v. Commissioner of Soc. Sec. Admin., 699 F.3d 337, 345 (4th Cir. 2012) ("[T]he ALJ's finding that [the plaintiff] had not established a disabling condition before his DLI [date last insured] was a conclusion reached after the ALJ's commission of two errors of law in evaluating the evidence. . . . If the ALJ determines [on remand] that [the plaintiff] has established a disability . . ., <u>but the medical evidence of the date of onset of that disability is ambiguous</u> such that a retrospective inference to the period before [the plaintiff's] DLI would be necessary, the ALJ will be required to obtain the assistance of a medical advisor in order to render an informed determination regarding the date of onset." (emphasis added)); Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995) ("[SSR 83-20's] language does not expressly mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred. Nevertheless, <u>if the evidence of onset is ambiguous</u>, the ALJ must procure the assistance of a medical advisor in order

to render the informed judgment that [SSR 83-20] requires." (emphasis added)); Scott v. Astrue, No. 5:11CV129, 2013 WL 1197098, at *8-9 (W.D. Va. Mar. 5, 2013) (unpublished) ("[W]hile [SSR 83-20] recommends the use of a medical advisor 'when onset must be inferred,' the context of this recommendation suggests that it is best understood to apply to cases in which the period in dispute is marked by a gap in the medical evidence. . . . [I]n the case now before the court there is no gap in treatment; there is no lack of available evidence; there is no ambiguity, and there is no decisional need to infer [the plaintiff's] onset date. As a number of courts have concluded, <u>SSR 83-20 simply is inapposite in cases where the medical evidence provides a complete chronology of the applicant's condition</u>." (citing cases) (emphasis added)), recommendation adopted, 2013 WL 1196663 (W.D. Va. Mar. 25, 2013) (unpublished); Cheeks v. Astrue, No. 3:09CV171, 2010 WL 2653649, at *3 (E.D. Va. June 30, 2010) (unpublished) ("SSR 83-20 does not expressly mandate that an ALJ is required to consult a medical advisor in every case where the onset of the disability is inferred. In Bailey, the Fourth Circuit concluded that the record was ambiguous because there was not evidence establishing the progression of the plaintiff's condition . . . . In contrast, <u>here the ALJ relied on evidence in the record documenting the progression of [the] [p]laintiff's condition</u>." (internal citation omitted) (emphasis added)).

17

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 18) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 20) be granted, and that this action be dismissed.

                                              /s/ L. Patrick Auld
                                                   **L. Patrick Auld**
                               **United States Magistrate Judge**

April 10, 2014